# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

J. DOE 1, et al.,

*Plaintiffs-Appellees*,

v.

ELON MUSK, et al.,

*Defendants-Appellants*.

On Appeal from the United States District Court
for the District of Maryland

## REPLY IN SUPPORT OF EMERGENCY MOTION FOR A STAY PENDING APPEAL AND FOR AN IMMEDIATE ADMINISTRATIVE STAY PENDING DISPOSITION OF THE STAY MOTION

YAAKOV M. ROTH
 *Acting Assistant
   Attorney General*

KELLY O. HAYES
 *United States Attorney*

MARK R. FREEMAN
ABBY C. WRIGHT
ADAM C. JED
GRAHAM WHITE
  *Attorneys, Appellate Staff
  Civil Division, Room 7230
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................1

ARGUMENT ...............................................................................................................1

I.       The Preliminary Injunction Should Be Stayed. ....................................................1

         A.       Plaintiffs' Appointments Clause Claim Lacks Merit.............................1

         B.       Plaintiffs' Separation of Powers Claim is Groundless. ...........................4

         C.       The Balance of Equities Favors a Stay. .........................................8

II.      The Preliminary Injunction Should Be Stayed To Permit USAID's
         Chief Operating Officer To Conduct USAID Business......................................9

CONCLUSION........................................................................................... 12

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

**INTRODUCTION**

The district court issued an extraordinary preliminary injunction against a Senior Advisor to the President (Elon Musk), a component of the Executive Office of the President (the U.S. Department of Government Efficiency Service (USDS)), and the Chief Operating Officer of the U.S. Agency for International Development (USAID)—an injunction that, in the name of protecting USAID from "dismantling," will stop USAID from functioning. This Court should stay the district court's order or, in the alternative, enter an immediate administrative stay while it considers the government's motion. At the very least the Court should stay the preliminary injunction as it applies to Jeremy Lewin, who is a properly appointed USAID official, not a defendant, and currently responsible for the agency's daily administration.

**ARGUMENT**

**I.     The Preliminary Injunction Should Be Stayed.**

**A.     Plaintiffs' Appointments Clause Claim Lacks Merit.**

Plaintiffs agree that "Officers of the United States," U.S. Const. art. II, § 2, cl. 2, are only those officials who "(1) 'exercise significant authority pursuant to the laws of the United States,' and (2) 'occupy a continuing position established by law.'" Opp. 11 (quoting *Lucia v. SEC*, 585 U.S. 237, 245 (2018)). Plaintiffs offer no sound reason to conclude that Elon Musk meets either, let alone both, tests.

The district court's acknowledgement that "Musk has no formal legal authority to make the decisions at issue" (Op. 31) should be dispositive. Mot. 13-17. Plaintiffs do not seriously claim that Musk has any such "authority." Instead, they describe ways in which Musk might have influenced the government's ultimate actions, suggesting that his influence may, at times, have been decisive. *See, e.g.*, Opp. 13. Plaintiffs tip their hand when they describe a range of USAID actions but decline to state that Musk undertook those actions or had the authority to command those who did. *See, e.g.*, Opp. 5 (stating that USAID officials "*were placed* on administrative leave," and "the USAID website *had been* shut down") (emphases added). Plaintiffs also allege that at other agencies (not at issue here), Musk "intimidated" officials who may themselves have had authority to act. Opp. 3. Even were that true, it would not mean that Musk can issue binding decisions or otherwise make any significant government decision without someone else's authorization. That means he holds no office "established by law" and is not an officer.

Plaintiffs underscore the error of their position when they assert that Musk has more power "than a typical presidential adviser." Opp. 13. Presidents have broad discretion to select and work with advisers. *See Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton*, 997 F.2d 898, 908-909 (D.C. Cir. 1993). And some presidential advisers can be, in a colloquial and practical sense, extremely

powerful. Mot. 15. But even the most powerful advisors do not "exercise

significant authority pursuant to the laws of the United States," *Lucia*, 585 U.S.

at 245, when they "lack[] the legal authority" to make decisions, Op. 28. *See* Op.

31. Significant or even decisive influence "does not offend the Appointments

Clause so long as [a] duly appointed official has final authority." *Andrade v.

Regnery*, 824 F.2d 1253, 1257 (D.C. Cir. 1987).* This Court should reject

plaintiffs' invitation to adopt an ad hoc and ill-defined metric aimed at measuring

how much power an adviser wields and then deeming that adviser an officer.

Even as to the two discrete actions that the district court believed Musk had

himself taken—shutting down USAID's headquarters and website—plaintiffs seem

to admit that Musk was just one of a set of "individuals known to be associated"

with those acts. Opp. 11. The conclusion that Musk took them is unsubstantiated,

and the absence of evidence does not warrant drawing inferences abut Musk's role.

*See* Mot. 16.  Regardless, plaintiffs do not dispute the district court's own

statement that Musk lacked the "authority" to make these decisions for the

government.  Op. 28-29, 31. And that is all that matters.

---

* Plaintiffs' citation (Opp. 13) to *Lofstad v. Raimondo*, 117 F.4th 493, 499
(3d Cir. 2024), further confirms the point. That case involved officials who, as a
matter of law, could block decisions made by a cabinet secretary.  *See id.* at 496-97
(citing 16 U.S.C. §§ 1854, 1856)).

Nor do plaintiffs rehabilitate the district court's contention that Musk "occup[ies] a continuing position established by law," *Lucia*, 585 U.S. at 245. *See* Mot. 17-19. Plaintiffs rely entirely on the district court's view that Musk previously "perform[ed] the duties and functions" of "the USDS Administrator." Op. 12. But the Appointments Clause does not apply to the exercise of *de facto* power separate from a legally established office, and plaintiffs' argument wrongly conflates their view of Musk's "functions" with whether he, in fact, occupied an office. The argument that Musk exercises influence at two levels of removal—first by influencing the USDS and then by using that role to influence agencies— weighs against, not in favor of, concluding that he occupies an office. And, in all events, because the district court's statements were limited to a past period of time, they cannot be the proper basis of a forward-looking injunction.

### B.     Plaintiffs' Separation of Powers Claim is Groundless.

Plaintiffs' "separation-of-powers" claim fares no better. Initially, plaintiffs offer no facts to show that USAID has been "dismantle[d]." Opp. 17-18. By plaintiffs' own telling, USAID continues to employ a significant workforce. Indeed, the record demonstrates that USAID retains employees deemed essential to perform various ongoing duties. Doc. 28-2 at 15. As stated in the Lewin Declaration, USAID's planned actions also include programmatic operations such as "secur[ing] the effective delivery" of an "HIV relief program," and "ensur[ing]

that USAID's critical global health supply chain remains intact." Doc. 77-2, ¶¶ 13-14.

Plaintiffs also fail to explain how the preliminary injunction addresses any separation-of-powers concern. The injunction does not require USAID to resume since-halted operations or prevent further actions taken by USAID officials. Indeed, because plaintiffs named no USAID officials as defendants, there are also serious questions about traceability and redressability. Mot. 19. Plaintiffs do not even respond to the redressability concern. And, in fact, the district court's order may prevent USAID officials from undertaking significant actions to increase USAID's operations and thereby redress plaintiffs' claimed injuries. *See* Doc. 77-2.

In all events, the district court's "separation-of-powers" theory should be rejected. Even proven statutory violations are not also separation-of-powers problems. Mot. 21. And this Court should reject plaintiffs' invitation to transform unalleged and unproven statutory violations into a constitutional claim. Indeed, plaintiffs create their own constitutional problem: asking a court to superintend an agency by declaring the sum of agency actions unconstitutional would itself create separation-of-powers concerns by effectively authorizing a "broad programmatic attack" and the kind of "day-to-day oversight of the executive's administrative

practices" for which courts are "ill-suited." *City of New York v. Dep't of Def.*, 913 F.3d 423, 431 (4th Cir. 2019).

Plaintiffs' references to "the third *Youngstown* category" (Opp. 17) fail to advance their claim. Plaintiffs identify no statute that bars USAID's restructuring. To the contrary, Congress has recognized and reinforced the President's authority in this area. *See, e.g.*, Foreign Assistance Act of 1961, Pub. L. 87-195, 75 Stat. 424, § 621 ("The President may exercise any functions conferred upon him by this Act through such agency or officer of the United States Government as he shall direct."); 22 U.S.C. § 2151b(c)(1) (permitting foreign aid "on such terms and conditions as [the President] may determine").

Plaintiffs are also incorrect (Opp. 17) that Congress precluded USAID's reorganization by making it an "independent establishment." 22 U.S.C. § 6563. That status confers legal consequences under the Administrative Procedure Act, *see, e.g.*, 5 U.S.C. § 105, but does not guarantee that an agency will retain specific functions or personnel or ensure independent operations. Indeed, Congress placed the USAID Administrator "under the direct authority" of the Secretary of State. 22 U.S.C. § 6592. Numerous administrations have reorganized USAID, such as President Bush, who undertook a "major transformation" of "procedures for directing and managing foreign assistance programs," including to eliminate several USAID offices and transfer their functions and some staff to the State

Department. *See* GAO, *Foreign Aid Reform: Comprehensive Strategy, Interagency Coordination, and Operational Improvements Would Bolster Current Effort*, 26-27 (2009). Plaintiffs thus have not identified any way in which USAID's reorganization is inconsistent with USAID's status as an "independent establishment"; at most, they have alleged that USAID is today a *smaller* independent establishment.

Plaintiffs also do not dispute that Congress recognized the President's authority to reorganize USAID, including to "eliminate" or "consolidate" USAID or "transfer" its authorities "to other agencies," Further Consolidated Appropriations Act of 2024, Pub. L. No. 118-47, 138 Stat. 460, 843-44, § 7063(a), (b), resting instead on the claim (Opp. 17) that Secretary Rubio failed to provide a sufficiently "detailed justification to Congress," 138 Stat. at 843-44. It is undisputed that Secretary Rubio provided *some* notice to Congress, stating his intent to review "the manner in which foreign aid is distributed" and noting that his review "may include," among other things, USAID's reorganization or downsizing. Doc. 73 at 11. Whether that notice was sufficiently "detailed" is a matter for Congress and the President and does not give rise to a justiciable separation-of-powers question. *See Virginia House of Delegates v. Bethune-Hill*, 587 U.S. 658 (2019); *NRDC v. Hodel*, 865 F.2d 288, 317 (D.C. Cir. 1988).

## C.    The Balance of Equities Favors a Stay.

Plaintiffs have not shown any irreparable injury that the preliminary injunction would prevent. Plaintiffs do not even defend the district court's reliance on reputational injuries. *See* Mot. 22-23.  Plaintiffs urge that some "personnel overseas on administrative leave" have unspecified safety concerns from losing access to USAID electronic systems. Opp. 23. But plaintiffs do not dispute that USAID is acting to ensure that overseas employees "retain access to Agency systems and to diplomatic and other resources until they return to the United States." Mot. 22. Indeed, another court declined to issue a similar preliminary injunction in part because "the prospect of [USAID employees] suffering physical harm from being placed on administrative leave while abroad is highly unlikely." *Am. Foreign Serv. Ass'n v. Trump*, 2025 WL 573762, *5 (D.D.C. Feb. 21, 2025). The absence of any irreparable injury to plaintiffs is reason alone to vacate the preliminary injunction, *see Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991), and also means that the equities overwhelmingly favor a stay.

Plaintiffs also miss the mark when they suggest (Opp. 22) that the government has not shown any irreparable harm.  The injunction intrudes on a coordinate branch and prevents USAID from functioning by barring the Chief Operating Officer (who is not a defendant) from operating the agency. Mot. 22.

8

Plaintiffs' suggestion that "other properly appointed officials at USAID … carry out th[ose] functions" disregards Acting Administrator Rubio's right to engage deputies of his choosing, as well as record evidence showing that, "[a]side from [Lewin], *only* Acting Administrator Rubio has sufficient authority" to properly administer "USAID's critical and life-saving" programs. Doc. 77-2 at 4-5 (emphasis added).

## II.    The Preliminary Injunction Should Be Stayed To Permit USAID's Chief Operating Officer To Conduct USAID Business.

At minimum, the Court should stay the preliminary injunction as to Jeremy Lewin. Plaintiffs do not argue that Lewin was ever an improperly appointed officer. Nor do they dispute that Lewin is USAID's Chief Operating Officer tasked with carrying out USAID's functions by USAID's most senior official, Acting Administrator (and Secretary) Rubio. Instead, plaintiffs urge that this Court should "[d]efer" to the district court's belief that a court-established "recusal" rule, Doc. 79 at 1-2, is "necessary … to avoid circumvention" and "continuing constitutional violations." Opp. 20-22. This sort of prophylaxis has no basis in logic or law.

The record shows that Lewin is "not" and has "never been, an employee of Elon Musk or USDS." Doc. 77-2, ¶¶ 3, 9; *see* Mot. 11. Plaintiffs illustrate their misunderstanding when they assert that "Lewin, as a DOGE member, is clearly a party to the case." Opp. 21. Plaintiffs sued "Musk" and "the United States DOGE Service" but not agency teams tasked with working on

related projects, *i.e.*, "DOGE Teams." Doc. 14, at 12-13. The district court

recognized that when it deemed that "[f]or purposes of this Order … [t]he term

["Defendants"] shall also include" any people "who at any time" had served on a

"DOGE Team." Doc. 75 at 1.

No sound basis exists for recusing Lewin based on any prior work with

White House officials. Plaintiffs' citations (Opp. 21) to *Lucia*, 585 U.S. at 251, and

this Court's discussion of *Lucia* in *Brooks v. Kijakazi*, 60 F.4th 735 (4th Cir. 2023),

underscore that conclusion. In *Lucia*, the Supreme Court ordered that an

improperly appointed Administrative Law Judge who decided a case should not

preside over the same case on remand because a plaintiff with a meritorious

challenge to "the appointment of an officer who adjudicates his case is entitled to

relief," and a judge who "has already" heard and decided a case "cannot be

expected to consider the matter" fresh. 585 U.S. at 251. Each of those

considerations weighs against the district court's recusal rule here. Unlike the ALJs

in *Lucia*, there is no question about the "constitutional validity" of Lewin's

"appointment." *Id.* Unlike in *Lucia*, the injunction here bars Lewin from making

new decisions, not from deciding issues that he "has already" decided. *Id.* And

unlike the "adjudicat[ions]" in *Lucia* where decisionmakers had to "consider"

issues based on a limited record and without certain outside influence, *see id.*, the

kind of "[a]gency policymaking" with which Lewin is tasked "is not" such "a

'rarified technocratic process,'" *Department of Commerce v. New York*, 588 U.S. 752, 781 (2019); *see id.* at 783 (stating that "[i]t is hardly improper" for officials "to come into office with policy preferences"); *C&W Fish Co. v. Fox*, 931 F.2d 1556, 1565 (D.C. Cir. 1991) (declining to "disqualify" officials based on their "opinions on the correct course of [an] agency's future actions").

Plaintiffs are on no firmer footing when they posit that Lewin engaged in his "own constitutional violations." Opp 21. Even setting aside the errors of that merits position, that misunderstands Lewin's role. Lewin is not a defendant. And the fact that he is one of a number of people "who at any time" served on USAID's "DOGE Team," Doc. 75 at 1, also does not establish that he engaged in "constitutional violations." The district court made no findings to that effect. And even if Lewin had authority to make made past programmatic changes to USAID and those changes amounted to having "eliminated" USAID, that would still bear little relation to a prospective recusal rule. The injunction has no effect on the core USAID changes at issue and permits other USAID officials to make any further changes to USAID. The court-established recusal rule serves only to interfere with the USAID Acting Administrator's designation of an official of his choice—here an official who the record describes as having important background on USAID's recent restructuring. Doc. 77-2 ¶¶ 3, 6-7, 12, 15; *see Califano v. Yamasaki*, 442

11

U.S. 682, 702 (1979) (an injunction must "be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs").

## CONCLUSION

The government respectfully requests an immediate administrative stay and a ruling on this motion by **Tuesday, March 25 at 5pm.**

Respectfully submitted,

YAAKOV M. ROTH
*Acting Assistant*
*Attorney General*

KELLY O. HAYES
*United States Attorney*

MARK R. FREEMAN
ABBY C. WRIGHT
ADAM C. JED
GRAHAM WHITE
*Attorneys, Appellate Staff*
*Civil Division, Room 7230*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-4052*

March 2025

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing reply to a motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,550 words. It also complies with the typeface and the type style requirements of Federal Rule of Appellate Procedure 27 because this reply has been prepared in Word for Microsoft 365 in Times New Roman 14-point font, a proportionally spaced typeface.

/s/ Graham White
GRAHAM WHITE

**CERTIFICATE OF SERVICE**

I hereby certify that on March 24, 2025, I electronically filed the foregoing response with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

*/s/ Graham White*
GRAHAM WHITE